WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gila River Indian Community,<br><br>    Plaintiff,<br><br>v.<br><br>Gilligan Bowman, et al.,<br><br>    Defendants. | No. CV-20-00103-TUC-SHR<br><br>**Order Re: Motions for Summary Judgment** |

Pending before the Court are motions for summary judgment filed by Plaintiff Gila River Indian Community (Doc. 339) and Defendants Gilligan Bowman, Blanca Bowman, Samuel Lunt, and Julee Lunt (Doc. 346). For the following reasons, the Court grants the Community's Motion and denies Defendants' Motion.[1]

**I.    Background**

This matter is related to nearly a century of litigation concerning water rights subject to the Globe Equity Decree No. 59 ("Decree") entered by this Court in 1935 to govern the distribution of Gila River water among the Gila River Indian Community (the "Community"), the San Carlos Apache Tribe, and various other landowners. *United States*

---

[1] The Court finds oral argument on the Motions will not aid in resolution of the issues. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.").

*v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 794 (9th Cir. 2017). "Parties to the Decree are entitled to divert water from the River for the 'beneficial use' and 'irrigation' of land in accordance with the specified priorities." *Id.* The Arizona Supreme Court has explained:

> [T]he Decree was intended to resolve all claims to the Gila River mainstem. The United States included as defendants in the Globe Equity litigation all those with claims to the mainstem of the Gila River, and the Decree includes all water rights theories that the parties could have asserted. Thus, as to the mainstem of the Gila River, the Decree is comprehensive.

*In re Gen. Adjudication of All Rts. to Use Water In Gila River Sys. & Source*, 127 P.3d 882, 902 (Ariz. 2006).

Here, the Community filed suit against a variety of landowners in March 2020, alleging their Decree rights are forfeited pursuant to A.R.S. § 45-141(C) because they failed to use the water for a period of five years or longer. (Doc. 1.) The majority of named defendants have been terminated from this action following settlement agreements with the Community. Thus, the only remaining defendants are Gilligan Bowman, Blanca Bowman, Samuel Lunt, and Julee Lunt (collectively, "Defendants"). The Community has moved for summary judgment against Defendants, and Defendants have moved for summary judgment in their response. (Docs. 339, 346.)

**II.      Jurisdiction**

This Court has continuing jurisdiction to enforce and interpret the Decree. *See Gila Valley Irrigation Dist.*, 859 F.3d at 794. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362.

**III.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate

the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the non-movant to demonstrate a genuine dispute exists; a genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The non-movant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968), but it must "come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). Thus, the "mere existence of a scintilla of evidence" in support of the non-movant's position is insufficient to defeat summary judgment—"there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (explaining the "fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party"). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### IV. Facts

The following material facts are undisputed, as set forth in the parties' statements of fact.

#### 1. The Bowmans

Since 2017, Gilligan and Blanca Bowman have owned three parcels near the Gila River known as the "Bowman Parcels," which have Decree rights. (PSOF[2] ¶¶ 1–7, Exhs. 13–14; DCSOF[3] ¶¶ 1–7.) The last time the Bowman Parcels were irrigated to grow a crop of any kind was in 1983 or earlier, and the only reason the Bowmans have not been farming on or irrigating the parcels is because the Gila River washed them out in 1983, rendering the land unsuitable for farming. (PSOF ¶¶ 9–11; DCSOF ¶¶ 9–11.) The Bowman Parcels, which consist of "Bowman 1," "Bowman 2," and "Bowman 3," remain unsuitable for irrigation. (PSOF ¶ 13; DCSOF ¶ 13.) Specifically, "Bowman 1 consists of river-bottom land with large 20-foot-plus trees, heavy brush, riparian vegetation, and a rough undulating surface," and will remain unsuitable for irrigation at least until the Gila River floods again and deposits an estimated 12 inches of topsoil on the parcel (PSOF ¶¶ 13–15; DCSOF ¶¶ 13–15); Bowman 2 and Bowman 3 are also river-bottom lands that will remain unsuitable for irrigation until the Gila River floods again and deposits an estimated 24 inches of topsoil on the parcels (PSOF ¶¶ 16–17; DCSOF ¶¶ 16–17). The parties agree the Gila River would need to have "high flows," i.e., a flood, to deposit the topsoil needed to make the Bowman Parcels suitable for irrigation; the parties, however, disagree as to how probable such a flood is to occur in the future, as detailed below. (PSOF ¶¶ 18–19; DCSOF ¶¶ 18–19.)

#### 2. The Lunts

Since 2018, Samuel and Julee Lunt have owned parcels near the Gila River known as the "Lunt Parcels," which have Decree rights. (PSOF ¶¶ 23–25, Exh. 15; DCSOF ¶¶ 23–25.) A series of floods in 1993 and 1994 moved the Gila River channel onto the Lunt

---

[2]The Community's Statement of Material Facts is docketed at item 340.
[3]Defendants' Controverting Statement of Facts is docketed at item 347.

Parcels, cutting a deep gully through the field and damaging the Lunt Parcels extensively. (PSOF ¶ 27; DCSOF ¶ 27.) The parties stipulate that the Lunt Parcels have not been irrigated for at least five years, but the record shows the Lunt Parcels have not been irrigated since 1993.[4] (PSOF ¶ 28–29; DCSOF ¶ 28–29.) In 2005, the Gila River flooded again and deposited sufficient topsoil to allow cultivation of the Lunt Parcels, but rocks, weeds, bushes, and flood debris remained present on the Lunt Parcels, and the ground was uneven. (PSOF ¶¶ 30–31; DCSOF ¶¶ 30–31.) To make the parcels suitable for irrigation and cultivation, the flood debris, trees, brush, and rocks needed to be removed, and the land needed to be leveled. (PSOF ¶ 32; DCSOF ¶ 32.)

V. **Applicable Law**

"In Arizona, surface water is subject to the doctrine of prior appropriation." *In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 35 P.3d 68, 71 (Ariz. 2001) ("*2001 Gila Adjudication*") (citing § 45-141(A)). Because beneficial use is "the basis, measure and limit to the use of water," § 45-141(B), "when the owner of a right to the use of water ceases or fails to use the water appropriated for five successive years, the right to the use shall cease, and the water shall revert to the public and shall again be subject to appropriation," "[e]xcept as otherwise provided in title [45] or in title 48." A.R.S. § 45-141(C). In other words, "[s]o long as utilization continues, the right remains secure," *2001 Gila Adjudication*, 35 P.3d at 71, but if an owner of a water right does not put the water to beneficial use for five years or longer, that water right is forfeited unless

---

[4]The Lunts dispute this to the extent that they "do not actual[ly] have personal knowledge of whether the Lunt [P]arcels have not been irrigated since at least 1993" because they did not own the parcels then. (DCSOF ¶ 29.) However, the Lunts do not dispute the parcels were washed out by the Gila River flooding in 1993 and 1994, or the veracity of the Community's expert report. (PSOF Exh. 2 ("Westfall Report") at 39; PSOF ¶ 27; DCSOF ¶ 27). The Westfall Report and the images therein show the Lunt Parcels being irrigated in 1991, and the 1997 and 2005 images show the parcels not being irrigated, as the river channel had moved onto the parcels in the 1997 image and the 2005 image shows the parcels starting to be overgrown with vegetation. (Westfall Report Figures 13–15.) Therefore, the Court finds no genuine dispute that the Lunt Parcels have not been irrigated at least since 1993. *See* Fed. R. Civ. P. 56(c)(1).

the owner has a sufficient reason for not using the water.

When the Complaint in this case was filed in 2020, Arizona law provided the following reasons were "sufficient cause for nonuse":

1. Drought, or other unavailability of water.
2. Active service in the armed forces of the United States during military crisis.
3. Nonvoluntary service in the armed forces of the United States.
4. The operation of legal proceedings.
5. Federal, state or local laws imposing land or water use restrictions, or acreage limitations, or production quotas.
6. Compliance with an applicable conservation requirement established by the director pursuant to chapter 2, article 9 of this title.
7. With respect to a water right appropriated for an irrigation use, either of the following:
    (a) Pendency of a proceeding before a court or the director to change the permitted use from irrigation to municipal or other uses pursuant to a court decree or section 45-156 or to sever the right from the land to which it is appurtenant and transfer it for municipal use pursuant to section 45-172.
    (b) After a change in the permitted use from irrigation to municipal pursuant to a court decree or section 45-156 or 45-172, insufficient demand for the water by the municipal users.
8. Any other reason that a court of competent jurisdiction deems would warrant nonuse.

A.R.S. § 45-189(E).

As noted, the parties do not dispute they have "fail[ed] to use the water for five successive years," § 45-141(C), and they agree the Defendants are not at fault for the conditions that led to their parcels being unsuitable for cultivation. The parties also agree the subsection at issue here is the exception in § 45-189(E)(8) (the "catchall exception"). (Doc. 339 at 6–7, 10–12; Doc. 346 at 8, 10, 13.) Therefore, the issue here is simply whether this Court deems Defendants' reasons for not using the water are sufficient to "warrant nonuse" under the catchall exception.

- 6 -

Although the parties present no published decisions interpreting what "warrant[s] nonuse" means, and the Court could find none, the Court finds guidance in Judge Bolton's orders about whether other landowners' nonuse was excused under the catchall exception.[5] In 2018, Judge Bolton considered at summary judgment whether the catchall exception applied so as to excuse Freeport Minerals Corporation ("Freeport")'s failure to use its water for five years. *See United States v. Gila Valley Irrigation Dist.*, 31-cv-00061-TUC-SRB (Doc. 226 ("2018 GE 61 Order")). Freeport argued its nonuse was warranted because the natural movement of the Gila River had, through no fault of Freeport's, rendered portions of the parcels unsuitable for farming. *Id.* at 4–5. Judge Bolton found "no evidence in the record supporting the exception's application," as Freeport had offered no evidence of a "likely future shift in the course of the Gila River" and there was no evidence the parcels would become irrigable following any such shift. *Id.* at 6. She further concluded it was "not enough" for Freeport to "declare its intent to irrigate these parcels when and if a course change occurs." *Id.* Judge Bolton also explained § 45-189(E) furthers the beneficial use of water and elimination of waste by "exempting only those situations in which beneficial use is temporarily impossible" or "temporarily impracticable." *Id.* at 6–7. Therefore, Judge Bolton concluded Freeport's nonuse was not excused under the catchall exception, and declared its Decree rights forfeited.

In another case between the Community and Freeport, Judge Bolton again considered at summary judgment whether Freeport's Decree rights were forfeited for nonuse. *Gila River Indian Cmty. v. Freeport Mins. Corp.*, 17-cv-00626-TUC-SRB (Doc. 128. There, Freeport urged the Court to read the catchall exception as excusing "nonuse occasioned by circumstances beyond the right holder's control," and specifically, "where, as here[,] the Gila River shifts course and renders farmland unsuitable for farming." *Id.* at 8–9. Again, Judge Bolton rejected that argument because Freeport had "offered no evidence of a likely future shift in the course of the Gila River." *Id.* at 9. She explained:

---

[5]The catchall exception was previously numbered as (E)(13) in the version in effect at the time of Judge Bolton's orders. The text of the catchall exception, however, has not changed.

1  "Without evidence of a likely future shift in the river's course, Freeport cannot prove that
2  water obtained pursuant to its Decree rights will be put to beneficial use—the bedrock of
3  Arizona water law." *Id.*

4  The Court finds no binding precedent on the application of the catchall exception in federal court, and the parties do not identify, nor is the Court aware of, any such decisions in Arizona state courts.  Although Judge Bolton addressed whether the catchall exception applied in the above cases, both involved land on which the Gila River had invaded and remained present.  The land at issue here is not presently invaded by the river or otherwise presently flooded.  Thus, it appears this Court is faced with a matter of first impression: whether the catchall exception excuses nonuse after the river has moved off the land and the flood waters have receded.

12  Based on the above, this Court concludes that whether § 45-189(E)(8) applies does not turn merely on whether the event occasioning nonuse is beyond the right holder's control.  Rather, there must be sufficient evidence showing the nonuse is likely to end in the near future.  As Judge Bolton explained, speculation that natural conditions *may* change in the future due to unpredictable natural events like flooding, and the intent to put the water to beneficial use again once such conditions change, are insufficient to warrant nonuse under § 45-189(E)(8).

### VI. Analysis

The Community moves for summary judgment, arguing Defendants have forfeited their Decree rights pursuant to § 45-141(C) because their parcels have not been irrigated for more than five years and Defendants' nonuse is inexcusable under § 45-189(E)(8).[6]  (Doc. 339 at 5, 9.)  Defendants oppose the Community's Motion and, in their Response,

---

[6]The Community also argues neither the Bowmans nor the Lunts have applied to sever and transfer their Decree rights, which the Bowmans and Lunts admit because they do not own land to which they could transfer their Decree rights and because, even if they did, they assert the process is "burdensome, lengthy, expensive and unlikely to lead to a positive result."  (Doc. 339 at 712; PSOF ¶¶ 12, 39; DCSOF ¶¶ 12, 39.)  The Court finds the availability of the sever-and-transfer process irrelevant to its reasoning in this specific case and, therefore, will not address these arguments.

- 8 -

also move for summary judgment, arguing nonuse "should be deemed excusable by this Court" under § 45-189(E)(8), and to hold otherwise would "run[] against the plain language and intent of the forfeiture statute itself." (Doc. 346 at 4.) The Community filed a Reply in support of their Motion and Response to Defendants' Motion (Doc. 354), and Defendants filed a Reply in support of their Motion (Doc. 358). The Community also filed a Notice of Supplemental Authority.[7] (Doc. 360.)

Because Defendants filed their cross-Motion in their Response, the Court addresses the Motions together, considering the evidence submitting in support of and in opposition to both Motions. *See Fair Hous. Council of Riverside Cnty.*, 249 F.3d at 1134. The Court addresses the claims against the Bowmans and Lunts in turn.

### A. The Bowmans

The Community argues the undisputed facts show "there is no valid excuse for nonuse" because the Bowman Parcels "are indefinitely unsuitable for irrigation." (Doc. 339 at 5, 7.) According to the Community, the catchall exception "implements the doctrine of beneficial use" and, therefore, "'exempt[s] only those situations in which beneficial use is temporarily impossible.'" (*Id.* at 7 (quoting 2018 GE 61 Order at 6).) Specifically, the Community argues the Bowmans' nonuse is not temporary, as the undisputed facts show the Bowman Parcels will remain unirrigated until an unpredictable flood occurs and

---

[7]The Community's Notice of Supplemental Authority points to a Gila Adjudication case in Maricopa County Superior Court, *In re: SLD-Paul Sale Inv. Co.*, No. W1-11-2805 (October 3, 2022), in which the Special Master applied A.R.S. § 45-189(E)(8). (Doc. 360.) That case involved whether water rights with a priority date before 1919 cannot be forfeited, and whether the government exemption from estoppel and statute of limitations defenses applies to forfeiture claims against the Arizona State Land Department ("ASLD"). *In re: SLD-Paul Sale Inv. Co.*, No. W1-11-2805 at 3–6. There, the ASLD, through its lessee, did not irrigate the land at issue for more than twenty years. *Id.* at 7–9. Because the ASLD knew the lessee was not irrigating and not only failed to cancel the lease, but renewed the lease and failed to take "actions to preserve the land as agricultural land," the Special Master found the ASLD "ha[d] not established that sufficient reason exists to excuse nonuse of water for irrigation purposes and prevent a forfeiture of a claimed right to irrigate the Land." *Id.* at 10–11. The facts and legal issues in that case are distinguishable and, in any event, the Special Master's findings are not binding on this Court.

deposits sufficient topsoil to make the parcels farmable. (*Id.* at 8–9.) The Community further asserts excusing the Bowmans' nonuse under the catchall exception "would eviscerate the doctrine of beneficial use" and "beneficial use would mean nothing if landowners could fail to irrigate . . . for nearly forty years, based on hope that an unpredictable, favorable flood event will happen to bring the right amount of topsoil to the right place without also destroying the area further." (*Id.* at 9.)

In response, the Bowmans argue their nonuse is excusable, "or should be deemed excusable by this Court," under § 45-189(E)(8) because they have "worked diligently" "[s]ince the flood[]" so they could again farm the land. (Doc. 346 at 4, 9.) (*Id.*) The Bowmans assert the "majority of [their] rehabilitation work on all their parcels was completed between 1999 and 2011," but the "rehabilitation work on the Bowman Parcels specifically was commenced in 2011." (DSOF[8] ¶¶ 6–8; PCSOF[9] ¶¶ 6–8.) Even accounting for Mr. Bowman's military service from 1995 to 1999, by the Bowmans' own admission, they did not begin rehabilitating the parcels at issue until 28 years after the parcels were washed out by the 1983 flood. (DSOF ¶¶ 5, 8; PCSOF ¶¶ 5, 8.) The Bowmans estimate the parcels "would be ready to farm in as little as 26 weeks following a sufficient high-water event," "once sufficient topsoil is in place."[10] (Doc. 346 at 6; DSOF ¶¶ 11–12.) The

---

[8]Defendants' Statement of Additional Facts ("DSOF") is docketed at item 347 at 15–19.

[9]The Community's Controverting Statement of Material Facts ("PCSOF") is docketed at item 355.

[10]The Bowmans assert: "According to their estimates, the Bowman [P]arcels would be ready to farm in as little as 26 weeks following a sufficient high-water event." (DSOF ¶ 11, Exh. 2 ¶ 13.) The Community objects to this statement, arguing it should be precluded under Federal Rule of Civil Procedure 37(c)(1) because it relies on Gilligan Bowman's March 3 2022 Declaration, which was disclosed long after the close of discovery. (PCSOF ¶ 11.) Alternatively, the Community argues that because the declaration was disclosed after fact discovery closed, "facts necessary to address [these statements] are unavailable to the Community" under Rule 56(d) of the Federal Rules of Civil Procedure. (PCSOF ¶ 11.) Although a party "is not allowed to use" untimely disclosed information "to supply evidence on a motion," the failure to timely disclose can be excused if "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). The Court finds no harm. And, the Community has not shown "specified reasons" "it cannot present facts essential to justify its opposition" to these statements under Rule 56(d). Therefore,

- 10 -

Bowmans contend their nonuse is temporary because, according to their expert, Mr. Ronnerud, "a sufficient high-water event is due to occur at any time." (Doc. 346 at 6; PSOF Exh. 4 ("Ronnerud Depo.") at 50:25–518. ) The Bowmans further argue, "Arizona law excuses nonuse from forfeiture when beneficial use is temporarily *impracticable*," and, given their rehabilitation efforts described above, they have done all they can to ensure that temporary impracticability is as short as possible. (Doc. 346 at 9 (quoting 2018 GE 61 Order).)

In reply, the Community argues the Bowmans' "[t]hirty-seven years of nonuse (and counting) is not temporary" and is inconsistent with the doctrine of beneficial use. (Doc. 354 at 1–6.) The Community relies heavily on Judge Bolton's 2018 and 2020 orders described above for the proposition that § 45-189(E)(8) is intended to promote beneficial use "by exempting only those situations where beneficial use is temporarily impossible" or "temporarily impracticable," and where the owner presents "evidence that its lands are only temporarily unsuitable for cultivation." (*Id.* at 2–3.) In other words, the Community argues: "the Decree, by incorporating the doctrine of beneficial use, does not allow for unused rights to be held in reserve indefinitely for an uncertain future event." (*Id.* at 5.) The Community asserts the question of whether nonuse is temporary "must be evaluated against a presumptive *five-year* statutory limit for nonuse," and the Bowmans' 37 years—more than seven times the five-year statutory period—is not consistent with beneficial use. (*Id.* at 4.) The Community further contends the Bowmans' nonuse is indefinite because they "have no plans" to bring in the topsoil needed to make the land suitable for cultivation, and "*nobody* knows how long it will be before the topsoil needed for these lands to be irrigable happens to flow down the Gila River to exactly where it is needed." (*Id.*)

In reply, the Bowmans argue "temporary impracticability is the correct standard," "'temporary' does not necessarily mean of short duration," and the Community "erroneously adds requirements" to § 45-189(E)(8) by suggesting the question of whether

---

the Court declines to preclude this statement as a sanction. The Court finds there is no genuine dispute that the Bowmans estimate it will take them approximately 26 weeks to start farming again after a sufficient flood.

- 11 -

nonuse is temporary must be evaluated against the five-year forfeiture period. (Doc. 358 at 4.) The Bowmans assert that not only is there no time period in any of the exceptions in § 45-189(E), but all exceptions are assumed to be for periods longer than five years because otherwise, there would be no need for exceptions. (*Id.*) The Bowmans further argue "choosing not to irrigate their land *is* consistent with beneficial use" because it would be "wasteful for them to attempt to use the water on land that cannot grow crops." (*Id.* (emphasis added).) The Bowmans contend Judge Bolton's 2018 GE 61 Order is non-binding and distinguishable, but "its core reasoning supports [their] position." (*Id.* at 6.) According to the Bowmans, the 2018 Order is distinguishable because, in that case, there was "no evidence . . . of a likely future shift in the course of the Gila River," but here, "there is evidence that the conditions of [the Bowmans]' land are temporary" because their expert, Mr. Ronnerud, "opined on likely future events" and the "temporary condition" of the parcels lacking sufficient topsoil "will reverse after a sufficient high-water event deposits silt [topsoil] on the parcels." (*Id.* at 7.) The Bowmans also assert the Community misrepresented Mr. Ronnerud's testimony about the probability of such a high-water event. (*Id.* at 7–8.)

      First, the Court finds there are no genuine disputes of material fact as to the Bowmans. Second, based on those undisputed facts, the Court concludes the Bowmans' reasons for not using their water for almost forty years at the time of this Order do not warrant nonuse under § 45-189(E)(8). Although the 1983 flood was certainly beyond their control, the Bowmans have not provided sufficient evidence showing their nonuse is temporary, nor have they provided a reason that warrants nonuse under § 45-189(E)(8). In particular, the Court notes that despite the Bowmans providing estimates of the costs and man-hours required to rehabilitate the parcels for farming, their estimates are for "*once a high-water event occurs* that deposits the necessary levels of topsoil," and includes only the man hours, equipment, and fuel costs "to accomplish the remaining vegetation removal and grading *once sufficient topsoil is in place*." (DSOF ¶¶ 10–12 (emphases added).) In other words, the Bowmans admit they are waiting to finish rehabilitating their parcels until

a "sufficient high-water event" not only occurs, but leaves the right amount of topsoil in the right places. In evaluating the Community's Motion, the Court believes the Bowmans' evidence, but finds it unreasonable to infer that such a flood is likely to occur in the near future so as to make the Bowmans' nonuse temporary. *See Tolan*, 572 U.S. at 660.

Even if a flood *is* "due to occur at any time" as they contend, the Bowmans have presented no evidence about what such an event will look like. And despite building "dikes to direct and retain high-flow waters to obtain maximum silt deposits," the Court finds it highly speculative to claim an unpredictable high-flow event will deposit sufficient topsoil on the Bowman Parcels in a manner that will allow them to farm the land again. (DSOF ¶ 7; PCSOF ¶ 7.) Indeed, the 1983 flood not only washed out and ruined the Bowman Parcels, but the Gila River channel moved. (PSOF, Exh. 1 ("Ronnerud Report") at 3.) And, according to the Bowman's own expert, "Periodic channel movement is expected with a threaded river" like the Gila. (*Id.*) That is, the Bowmans' own evidence suggests the outcome of any such high-water event is unpredictable, and could further damage the parcels or even move the channel back onto the parcels again. Although the Court believes the veracity of Mr. Ronnerud's report, having reviewed his deposition, the Court cannot reasonably infer that a flood that brings the right amount of silt to the right places and does not further damage the parcels is likely to occur in the near future. (Ronnerud Report at 9, 16.) Indeed, after acknowledging "no one knows" when a flood will occur, Mr. Ronnerud agreed floods bring a variety of material with them, "[e]very one's different," he didn't know "what [the future] floods are going to look like," no one knows how the silt will be distributed or what path the flood will take, and it is not possible to predict where the river will deposit the silt. (Ronnerud Depo. at 50:2–53:3.) Therefore, the Court concludes the Bowmans' assertion that the flood they are waiting for is due at any time is too speculative to demonstrate their 40-plus years of nonuse is temporary.

Although the Bowmans cannot be blamed for the Gila River flooding and ripping away soil suitable for cultivation, this phenomenon did not prevent them from rehabilitating the land and bringing in topsoil for 40 years. Having admitted to nonuse for

more than five years and having failed to demonstrate the Bowman Parcels are only temporarily unsuitable for cultivation because they admit they are waiting for another speculative flood to deposit the needed topsoil, the Bowmans have not provided a reason this Court deems warrants nonuse under § 45-189(E)(8). Therefore, the Community is entitled to judgment; the Bowmans have forfeited their Decree rights.

### B. The Lunts

The Community argues there is no "legal excuse for nonuse of the Decree rights" because the Lunts "failed to prepare the land for cultivation from 2005 to 2020." (Doc. 339 at 10.) The Community asserts the Lunt Parcels "could have been put back into cultivation at any time since 2005 in a matter of months if adequate resources had been devoted to clearing and leveling the land."[11] (*Id.*) According to the Community, the doctrine of beneficial use requires a holder of a water right to "do all that is possible and necessary to put the water right to use" or else "the right is forfeited." (*Id.*) The Community further argues the lack of necessary time or money, or poor health are not sufficient reasons to excuse nonuse under § 45-189(E)(8) for two reasons. First, § 45-189(E)(8) "does not excuse those who fail to use a right" "regardless of their personal reasons for not doing so," and other Western states that apply the beneficial use doctrine "are in accord that the doctrine of beneficial use does not vary with individual personal circumstances." (*Id.* at 10–11.) Second, even if personal circumstances could constitute a valid excuse for nonuse, the Lunt Parcels could have been put back into production many years ago if adequate resources had been devoted and, to the extent the Lunts may argue

---

[11]The Lunts dispute this, arguing "a lack of adequate resources, including available time, was the basis for not being able to get the parcels back into production." (DCSOF ¶ 36.) The Lunts, however, do not dispute their expert, Mr. Ronnerud, estimated "three to six months should be adequate to clear and remove the debris," depending on the farmer's personal circumstances. (PSOF ¶ 36, Ronnerud Depo. at 40:10–22, 43:4–15.) Mr. Ronnerud also noted the 3–6 months is just for clearing and grading the land, and does not include "the infrastructure [needed] in order to put water on the land." (*Id.* at 43:4–11.) Having reviewed Mr. Ronnerud's deposition, the Court find no genuine dispute here. That the Lunts claim they and their predecessor-in-interest lacked the resources is not relevant to how long it would take *if* such resources were available and devoted to the effort.

- 14 -

they or their predecessor lacked such resources, the Community submits the Lunts have provided no such evidence. (*Id.* at 10.)

In response, the Lunts argue their nonuse should be excused because they have "worked diligently to reclaim their parcels despite the challenge and expense,"[12] "as economic circumstances and personal circumstances have allowed." (*Id.* Doc. 346 at 4, 6, 11.) The Lunts point to the phrase "temporarily impracticable" in Judge Bolton's 2018 GE 61 Order and argue that, according to Black's Law Dictionary, "impracticable" means: "a condition that 'though possible . . . would cause extreme and unreasonable difficulty.'" (*Id.* at 12.)[13] They assert "[h]aving [them] clear their lands and begin cultivating between March 2015 and 2020 (the time period at issue in this case) certainly fits the definition of impracticable" because the Lunts did not acquire the land until 2018 and, as a young family, "it would have been extremely difficult and unduly costly to rehabilitate the relatively small parcels at issue in this case," "[e]specially with all the other costs and obligations they had incurred when acquiring the farm." (*Id.* at 12.) Lastly, the Lunts argue their nonuse is not only temporary, but "nearly over" as they expect to have their parcels "ready for production

---

[12]The Community objects to this as "characterizations and opinion, rather than an assertion of material fact" and argues there is no evidence the Lunts performed any rehabilitation work until 2020. (PCSOF ¶ 24, citing Westfall Report and PSOF ¶ 37; DSOF ¶ 24; DSOF Exh, 3 (Samuel Lunt Declaration) ¶ 6.) Having reviewed the record, the Court also finds no evidence showing such work began before 2020. Indeed, the January 2020 aerial image in the Westfall Report shows the parcels overgrown with vegetation; the March 2020 image shows the land having been mostly cleared. (Westfall Report Figures 17–18.) The Court agrees this statement is more of a characterization or opinion than a proper assertion of fact, and concludes the Lunts have not carried their burden of establishing this as a fact. *See Nissan Fire & Marine Ins.*, 210 F.3d at 1102; Fed. R. Civ. P. 56(c)(2).

[13]Black's Law Dictionary does not define "impracticable," but rather defines "impracticability" as, in the context of contracts: "a fact or circumstance that excuses a party from performing an act, esp. a contractual duty, because (though possible) it would cause extreme and unreasonable difficulty." *Impracticability*, Black's Law Dictionary (8th ed. 2004). The Court notes this definition is specific to contract law and the issue here is not contract performance—it is whether this Court deems Defendants' reasons for not irrigating "warrant nonuse" under the statute. Defendants' reliance on this definition is inapposite.

by the end of 2022."[14]  (*Id.* at 13; DSOF ¶¶ 23–25, Exh. 3 (Samuel Lunt Declaration) ¶ 7).

In reply, the Community asserts the Lunts' position "would change the forfeiture rule from one of beneficial use into a fact-intensive, subjective inquiry into whether they used their money and time wisely doing other things [instead of rehabilitating the parcels]," and "[t]here is no authority for doing this," as personal circumstances "are not, as a matter of law, a basis for finding that nonuse is 'warrant[ed]' under the doctrine of beneficial use." (Doc. 354 at 11.)  Citing this Court's December 8, 2020 Order in this case (Doc. 248 at 6), the Community reiterates: "The doctrine of beneficial use strictly allocates a scarce resource based on *usage*." (*Id.* at 12.)  The Community also notes the Lunts have no answer to the out-of-state cases cited in the Community's Motion and "ignore that Arizona courts regularly rely on cases from other Western states applying the doctrine of beneficial use." (*Id.*)  Additionally, the Community asserts the only "personal excuses" for nonuse are periods of active and involuntary military service, *see* § 45-189(E)(2), (E)(3), but nothing in the statute "places personal financial or health circumstances on par with active or involuntary military service," and there is no justification for those trumping the doctrine of beneficial use.  (*Id.* at 13.)  The Community further argues: "The new, need-based doctrine of best efforts that the Lunts are proposing as a substitute for the doctrine of beneficial use would give the Court an intolerably subjective task" of "evaluating the wisdom and justification of the Lunts' and their predecessors' decisions, over fifteen years, to spend their time and money on things *other than* cultivating and irrigating these lands." (*Id.*)  And, even if the Court found personal circumstances could excuse a minor delay, the Community contends the delay here is excessive and "the Lunts have failed to make an

---

[14]The Community disputes this estimate, citing to Samuel Lunt's deposition where he stated he "couldn't give [] a date" by which he thought the parcels would be ready for cultivation or irrigation because he "d[id]n't know how long it would take," but he had "a five-year plan to put it back into production."  (DCSOF ¶ 25; PSOF Exh. 6 (Samuel Lunt Deposition) at 14:20–15:10.)  Having reviewed Samuel Lunt's deposition and his Declaration, the Court finds there is no genuine dispute that the Lunts *estimate* their parcels will be ready for production by the end of 2022.

adequate showing that both they *and* their predecessors in interest were personally justified in not irrigating these lands," while they irrigated other lands. (*Id.* at 14.)

Because Defendants' arguments in their Reply described above apply to both the Bowmans and the Lunts, the Court refers to their arguments in Section VI(A) and will not repeat them here. Specific to the Lunt Parcels, however, the Lunts reiterate their rehabilitation efforts are nearly complete and point to photos taken by the Community's expert showing their progress. (Doc. 358 at 8 (citing PSOF Exh. 2 ("Westfall Report") at 16–24).) As to the Community's argument there is no authority to support a "fact-intensive, subjective inquiry into whether [the Lunts] used their money and time wisely" in rehabilitating the land, the Lunts argue this "ignores the broad statutory language that calls for the court to look at any reason that would warrant nonuse." (*Id.*) The Lunts assert that although the Arizona forfeiture statute is not fact-intensive, "the exceptions to that rule may be." (*Id.*) The Lunts point out that many of the enumerated exceptions in § 45-189(E) "do not look at the condition of the land" and the term "any other reason" is not limited to only considering the conditions of the land. (*Id.*) As to the non-Arizona cases the Community cites, the Lunts contend they are irrelevant, as none "evaluated a broad catchall provision like Arizona's." (*Id.*) Finally, the Lunts assert that while the Community appears to suggest there is a distinction between a minor delay and an "excessive" one, the statute makes no such distinction. (*Id.* at 9.)

Believing the Lunts' evidence and drawing all reasonable inferences in their favor, the Court concludes the Lunts' nonuse is not warranted under § 45-189(E)(8) because their reasons are not consistent with beneficial use. Like the Bowmans, the Lunts' parcels were rendered unfarmable through no fault of their own. Unlike the Bowmans who are waiting for an unpredictable, speculative flood, the Lunt Parcels have sat for over fifteen years unirrigated because the Lunts and their predecessor did not rehabilitate them and put them back into production sooner. As Judge Bolton explained in her 2018 GE 61 Order, the catchall exception furthers the goal of efficiently allocating water "by exempting only those situations in which beneficial use is temporarily impossible" or "temporarily

- 17 -

impracticable." 2018 GE 61 Order at 6–7. Although beneficial use was temporarily impossible after the Gila River flooded in the 1990s and remained on the Lunt Parcels, the undisputed evidence shows the river had moved off the parcels and the parcels were dry again in 2005. (Westfall Report, Figures 14–15.) The only obstacle to putting the parcels back into production the Lunts have identified is their lack of resources and perhaps their predecessor's. Although the Lunts assert they and their predecessor lacked the resources to rehabilitate the land sooner, they do not provide sufficient evidence for the Court to evaluate that claim. In the absence of more guidance from the Legislature or any Arizona courts interpreting this statute in such a manner, this Court declines to decide whether the lack of resources can never warrant nonuse under the catchall exception. However, based on the record here, the Court concludes the Lunts' nonuse is inconsistent with the overarching principle that governs water law in Arizona: efficiently allocating this increasingly scarce and precious resource to those who put it to beneficial use. Accordingly, the Lunts have not provided a reason that warrants nonuse under § 45-189(E)(8), and the Community has demonstrated it is entitled to judgment as a matter of law. The Lunts' Decree rights are forfeited.

### VII. Conclusion

Based on the undisputed material facts and believing Defendants' evidence and drawing reasonable inferences in their favor, the Court concludes the Defendants' reasons do not warrant nonuse and, therefore, the Community is entitled to judgment as a matter of law on its forfeiture claims against the Bowmans and the Lunts.

Accordingly,

**IT IS ORDERED:**

(1) The Community's Motion for Summary Judgement (Doc. 339) is **granted.**

(2) Defendants' Cross-Motion for Summary Judgment (Doc. 346) is **denied.**

. . . .

. . . .

. . . .

(3) The Community shall lodge a proposed form of order, as well as legal descriptions and maps indicating the Decree rights to be declared as forfeited and extinguished from the Globe Equity No. 59 Decree. The Community shall file such proposed form of order on or before **Friday, March 31, 2023**.

Dated this 24th day of March, 2023.

Honorable Scott H. Rash
United States District Judge